> expert witness fees, charges for telephone, and incidental expenses. Time charges for additional legal services other than listed herein will be an hourly rate of $310.00/hour for additional work other than as stated in (4)(a)-(c) below which shall increase by $10 on each November 11. There is no additional work contemplated at date of this statement. Adversary Proceedings are not included in this fee and client agrees that attorney will not be required go appear in or/defend same.

LaFrance Fee Disclosure, Par. 1.[1]

Paragraph 5 of the LaFrance Fee Disclosure indicates that the preconfirmation work for which the $2,500 was charged would be limited to: (a) legal advice; and (b) preparation and filing of the bankruptcy petition, schedules, statement of affairs and plan, and representation of the debtor at the meeting required under 11 U.S.C. § 341 and adjournments thereof. Indeed, Subparagraph (e) provides: "Attorney fees are estimated and assume no objections or other contests such as motions for relief from stay; trustee motions to dismiss; objections to claims; [or] valuations hearings . . . ." Pursuant to Paragraph 6, "[r]epresentation of debtor in Adversary Proceedings and contested matters" is specifically excluded.[2]

---

[1] The Court has not bothered to insert the familiar term "sic" in the myriad of locations where grammar or consistency is lacking or absent. In but one example, the paragraph twice refers to "4(a)-(c) below." There is no "4(a)-(c)" in the document.

[2] Not raised, either in the objection of the Chapter 13 trustee to Attorney Lafayette's fee application or in the Case Management Order described below, is whether this kind of "parsing" of services typically rendered in Chapter 13 cases is permissible. See In re Egwim, 291 B.R. 559 (Bankr. N.D. Ga. 2003); In re Castorena, et al., 270 B.R. 504 (Bankr. D. Idaho 2001).

4

The case proceeded rather unremarkably to confirmation.[3]   The progress of the case postconfirmation, however, was more troublesome.  Shortly after confirmation, the debtor fell behind in his payments to the first mortgagee on his residence.  In October of 2002, the first mortgagee sought relief from the automatic stay in order to foreclose.  In December, following a hearing on that request, the Court approved a stipulation between the parties that, in the event of the debtor's failure to cure his postpetition default on a predetermined schedule, relief would be granted on notice of default by the first mortgagee.  That notice issued in February of 2003 and relief from the automatic stay was granted shortly thereafter.

In the nick of time, the debtor was able to locate a buyer for the property and Attorney Lafayette filed a motion for leave to sell the property in late February of 2003. The sale was subsequently approved by the Court in April of 2003.  However, in the motion, Attorney Lafayette requested that the Court approve compensation in the amount of $2,000 for services rendered "as an administrative expense to the Debtor-in-possession."  Accordingly, on April 10, 2003, the Court ordered Attorney Lafayette to file a fee application within 14 days.[4]

On April 23, 2003, 13 days after the issuance of the order, Attorney Lafayette sought leave to file his fee application one day late, complaining that an "ongoing

---

[3]The Chapter 13 trustee did object to the first plan filed, complaining that the expenses set forth on Schedule J included items not necessary for the debtor's support.  The matter was resolved, however, with the filing of an amended Schedule J and a modified plan, increasing the dividend to creditors.

[4]The order entered on April 11, 2003.

abscessing tooth" had caused him to feel ill and lose much time from his desk.[5] The application, now before the Court, was indeed filed on April 24, 2003. It seeks total compensation in the sum of $4,458.16 in compensation, of which $2,595.44 remains unpaid. Of the sum sought to be allowed, $4,204.00 is the component sought for professional services. Attorney Lafayette claims he devoted 12.85 hours, at rates ranging from $310 to $320 per hour; and paralegals devoted 4.3 hours at rates ranging from $35 to $65 per hour. Yet a close examination of the time entries reveals a curious division of labor. Attorney Lafayette, at his elevated rate, conducted all of the initial meetings with the debtor and prepared the schedules and statement of affairs. But when that debtor required a motion for avoidance of a judicial lien, that work was done by a paralegal with no follow-up time entry showing attorney supervision. Further, although the time entries reflect that Attorney Lafayette reviewed the first mortgagee's motion for relief from the automatic stay (for 0.1 hours), there are no time entries reflecting a conversation with the client, and the response was prepared by a paralegal (for 0.1 hours) with no reflection of attorney supervision. And, even more troubling, between the date of the filing of the motion for relief from stay and the hearing on that motion at which the agreement for entry into the stipulation was made, there is no indication of any conversations with the debtor that would have granted Attorney Lafayette the facts necessary to oppose the motion or agree to the terms of the stipulation in a manner consistent with Fed. R. Bankr. P. 9011.

---

[5]The motion was allowed on April 24, 2003, but the court docket does not show action on the motion. In any event, Attorney Lafayette's request was moot, as the motion sought leave to file the motion on the 14th day after issuance of the order, within its original scope.

6

The Chapter 13 trustee objects to the fee application. First and foremost, she maintains that the hourly rate charged by Attorney Lafayette is excessive. She refers to a recent, unpublished decision by Judge Rosenthal in this district, who ruled that Attorney Lafayette's rate was excessive and reduced it to $225 per hour. The Chapter 13 trustee further complains that, while the LaFrance Fee Disclosure sets forth a retainer of $415, the fee application recites that retainer as $600 in one location and $685 ($500 plus the filing fee) in another. She also complains of two hours of duplicate time entries by Attorney Lafayette and his paralegals.

The fee application was subsequently included in the Case Management Order, dated June 24, 2003, further described below.

B.    Marta L. Oyola

Marta L. Oyola filed a Chapter 13 case on September 4, 2002 and was represented by Attorney Lafayette. Shortly thereafter, Attorney Lafayette filed a "Disclosure of Compensation of Attorney for Debtor" (the "Oyola Fee Disclosure"). The Oyola Fee Disclosure was similar in form and content to the Lafrance Fee Disclosure, containing the same infirmities and the same hourly rate. The retainer was here represented to be $500, against a fee of $3,000 with the same conditions set forth in the LaFrance Fee Disclosure.

The section 341 Meeting was conducted on October 23, 2002. At that meeting, the Chapter 13 trustee complained that the debtor had claimed an exemption in her residence in the amount of $65,000, pursuant to 11 U.S.C. § 522(d)(1). Because the applicable exemption was then limited to $17,425, and therefore overstated by $47,575, the Chapter 13 trustee asked that the debtor's Schedule C be amended. It was indeed amended. On

7

November 1, 2002, Attorney Lafayette caused an amended Schedule C to be filed, this time seeking an exemption of $81,000, pursuant to 11 U.S.C. §522(d)(1). The Chapter 13 trustee objected again. Yet, between the date of the filing of her objection, January 29, 2003, and the hearing thereon on March 10, 2003, no further amendment was filed. Accordingly, the Chapter 13 trustee was compelled to appear and argue the matter. This Court swiftly sustained the Chapter 13 trustee's objection and ordered the debtor to file an amended Schedule C within 14 days.

Referring specifically to the foregoing undisputed (and undisputable) facts, the Chapter 13 trustee filed, on March 21, 2003, the instant "Motion of Chapter 13 Trustee for Order Requiring Counsel to Disgorge Retainer."[6] In summary, she contends that the debtor deserved better. On April 16, 2003, Attorney Lafayette filed a "Response to Motion of Chapter 13 Trustee for Order Requiring Counsel to Disgorge Retainer."[7] In that response, Attorney Lafayette makes three points. First, although he concedes the foregoing facts, Attorney Lafayette claims in three different paragraphs of his response that his errors were not the result of "careless"(sic).[8] Second, he argues that any error was the fault of his computer software, which was, he says, unable to integrate unique circumstances of the case into its calculation. Attorney Lafayette concedes, however, that

---

[6] Presumably, the Chapter 13 trustee also intended that the Court disallow all of Attorney Lafayette's compensation, not just the retainer.

[7] Two additional observations should be made. The response was filed 16 days late; it was due on April 1, 2003. See Mass. Bankr. L. R. ("MBLR") 9013-1(d). And, although transmission of the Response by facsimile was permitted by MBLR 5005-4, the transmission date listed at the top of the pleading would suggest a filing date three (3) years earlier.

[8] The irony of these typographical errors is not lost on the Court.

8

he should have overridden the program and listed the exemption as "unknown". Third, he

alleges:

> The debtor's counsel is currently experiencing a serious dental issue
> which requires the extraction of two teeth. The debtor's counsel has been
> prescribed a serious pain medication which is intended to reduce the pain
> associated with the tooth abscess as the abscess enters the nerve of the
> teeth. Debtor's counsel was at the time of preparation of the documents in
> great pain and used the prescribed medication to reduce the pain. The
> medication has the effect of creating drowsiness and at the time of
> preparation of the schedules and plan and other parts (sic) the influence of
> the narcotic pain medication apparently caused debtor's counsel to be less
> alert than he was aware of. Debtor's counsel has met with debtor and
> prepare (sic) amended documents, without charge to the debtor for time or
> costs.

The Court responded on April 16, 2003 by ordering Attorney Lafayette to file a fee

application. That application seeks total compensation in the sum of $6,104.31 of which

the sum of $4,170.25 remains unpaid. Of the sum sought to be allowed, $5,655.25 is the

component sought for professional services. Attorney Lafayette claims he devoted 17.15

hours, at rates ranging from $310 to $320 per hour, and paralegals devoted 3.45 hours at

rates ranging from $45 to $65 per hour. An additional sum of $449.06 was sought for

reimbursement of expenses.

The fee application was subsequently included in the Case Management Order,

dated June 24, 2003, further described below.

C.    Hector L. Rolon

Hector L. Rolon filed a Chapter 7 case on October 1, 2002 and was represented by

Attorney Lafayette. Shortly thereafter, Attorney Lafayette caused the case to be converted

to one under Chapter 13 and filed a "Disclosure of Attorney Compensation for Debtor" (the

9

"Rolon Fee Disclosure"). The Rolon Fee Disclosure was similar in form and content to the LaFrance and Oyola Fee Disclosures, containing the same infirmities and the same hourly rate. The retainer was here represented to be $500, against a fee of $3,000 with the same conditions set forth in the LaFrance and Oyola Fee Disclosures.

On December 20, 2002, the Chapter 13 trustee filed a motion to dismiss the Chapter 13 case.[9] She explained that at the section 341 meeting, a month earlier, she had requested that the debtor file amended Schedules C and J and produce a copy of his 2001 tax returns, evidence of the assessed value of his residence and financial statements produced in a recent divorce proceeding – but none of these requests had been complied with. She maintained that the debtor's failure to cooperate constituted an unreasonable delay prejudicial to creditors and a basis for dismissal under 11 U.S.C. §1307(c)(1). The opposition filed by Attorney Lafayette on December 23, 2002 explained that he and the debtor had been unable to meet due to the requirements of the debtor's employment (which kept the debtor out of town) and due to "recent winter storms." Attorney Lafayette "expected" that the amendments would be filed as soon as possible, but said nothing about the requested documentation. The Chapter 13 trustee's motion was heard on February 12, 2003. Now almost two months since the filing of the opposition, Attorney Lafayette had still not filed the requested documentation, and the Court ordered the debtor to comply on or before February 14, 2003.

---

[9]This was in fact the second such motion. The first was on account of the debtor's failure to provide evidence of insurance on his property. That motion was resolved by agreement between the parties.

By March 7, 2003, the debtor had still not complied and the Chapter 13 trustee had had enough. She filed her third motion to dismiss, complaining that the requested amendments to the Schedules had not been filed and the requested documents (including by now the statements for the fourth quarter of 2002) had not been produced. The Chapter 13 trustee also filed a motion requesting the Court to order Attorney Lafayette to file a fee application. She requested that any compensation be disallowed, noting also that:

1. the original case had been filed as a Chapter 7, notwithstanding the fact that the debtor could not have received a Chapter 7 discharge because he had filed a previous Chapter 7 case and received a discharge within the past 6 years;[10]

2. the reason for the Chapter 13 trustee's request that Attorney Lafayette amend Schedule C (still not done almost 4 months after the request) was that the original Schedule C had listed, pursuant to §522(d)(2), an obviously excessive exemption in the amount of $64,315.18 in a truck;[11] and

3. the reason for the Chapter 13 trustee's request that Attorney Lafayette amend Schedule I (still not done almost 4 months after the request) was that the Debtor claimed in the original Schedule I that he worked for Webster Trucking, but testified at the section 341 meeting that he had not worked there since November of 2002.

Finally, the Chapter 13 trustee objected to confirmation of the debtor's plan, for the reasons stated above.

Attorney Lafayette failed to timely respond to either of the foregoing motions. Accordingly, on March 31, 2003, the Court allowed the Chapter 13 trustee's motion to

---

[10]The debtor was also represented in the previous case by Attorney Lafayette. Furthermore, the discharge in the previous Chapter 7 case had issued only a few months before the filing of the instant case.

[11]The available exemption under § 522(d)(2) was then $2,775.

dismiss, as well as her motion requesting that Attorney Lafayette be ordered to file a fee application. The Clerk's Office had previously set the objection to confirmation for hearing on April 2, 2003, At the hearing, the Court, not realizing the case was dismissed, again ordered the Debtor to file amended Schedules C and I, this time before April 23, 2003. Amended Schedules were finally filed on April 22, 2003. However, Schedule I still reflected the debtor with the wrong employer.

On April 25, 2003, Attorney Lafayette filed a motion to vacate the dismissal order of March 31, 2003. As grounds, Attorney Lafayette asserted that his opposition to the Chapter 13 trustee's motion to dismiss was timely filed by facsimile, but was for some reason not reflected on the Court docket.[12] He further noted that the amended Schedules were indeed filed in response to the Court's order of April 2, 2003. Over the objection of the Chapter 13 trustee, and notwithstanding Attorney Lafayette's continued failure to properly list the debtor's place of employment almost seven (7) months after his error was brought to his attention, the Court vacated the dismissal order on May 14, 2003. The debtor's Chapter 13 plan was subsequently confirmed on August 26, 2003.

Attorney Lafayette filed his fee application, now before the Court, on May 14, 2003. It seeks total compensation in the sum of $4,839.61, of which $4,109.25 remains unpaid. Of the sum sought to be allowed, $4,669.25 is the component sought for professional services. Attorney Lafayette claims he devoted 14.4 hours, at rates ranging from $310 to $320 per hour, and paralegals devoted 2.05 hours at rates ranging from $35 to $65 per

---

[12]There is no evidence that Attorney Lafayette filed this opposition.

12

hour. An additional sum of $170.56 was sought for reimbursement of expenses. Attorney
Lafayette reported payments received in the amount of $560.00

The fee application was subsequently included in the Case Management Order,
dated June 24, 2003, further described below.


D.    Kathleen M. Daigneault

Kathleen M. Daigneault filed a Chapter 13 case on November 1, 2002 and was
represented by Attorney Lafayette.   Shortly thereafter, Attorney Lafayette filed a
"Disclosure of Attorney Compensation for Debtor" (the "Daigneault Fee Disclosure").  The
Daigneault Fee Disclosure was similar in form and content to the LaFrance, Oyola and
Rolon Fee Disclosures, containing the same infirmities and the same hourly rate.  The
retainer was here represented to be $500, against a fee of $3,000 with the same conditions
set forth in the LaFrance, Oyola and Rolon Fee Disclosures.

On January 17, 2003, the Chapter 13 trustee timely filed an objection to
confirmation of the debtor's plan. She complained that the debtor had filed a 36 month
plan; yet, the debtor's husband (with whom she was living) was the recipient of a lottery
prize with a gross payment of $50,000 per year for 20 years. Accordingly, the dividend to
unsecured creditors, which all agreed should be at 100%, should have been payable in a
lump sum payment on the next lottery payoff date. On March 12, 2003, after hearing, the
Court sustained the Chapter 13 trustee's objection and ordered the debtor to file an
amended plan within 30 days.

The debtor failed to comply with the March 12, 2003 order.  No amended plan was
filed. On June 3, 2003, this Court issued, *sua sponte*, an order to show cause on June 18,

13

2003 why the "debtor's Chapter 13 petition should not be converted to a petition under Chapter 7 or dismissed for failure to comply with this Court's order of March 12, 2003 requiring the filing of a plan within 30 days of the order." An amended plan was then late-filed on June 9, 2003. At the June 18, 2003 hearing, the Court ruled that cause for dismissal or conversion was not shown, but ordered Attorney Lafayette to file a fee application on or before July 9, 2003.

No fee application was filed by the July 9, 2003 deadline. On July 15, 2003, six (6) days later, Attorney Lafayette filed a motion to enlarge the time for filing a fee application to July 16, 2003. The stated grounds were that "Counsel's paralegal became ill at the beginning of last week with a stomach virus and was away from her desk for most of the week." The motion came to the Court's attention on July 17, 2003, the day after the requested extended deadline; however, the application had still not been filed by July 16, 2003, the requested extended deadline. Accordingly, the request for an extension to July 16, 2003 was denied as moot. On July 17, 2003, Attorney Lafayette filed still another motion to reset the date, this time a motion to allow a late filing of his fee application, together with the fee application itself. The stated grounds seeking approval of the late filing were the same as in the previous request for extension. At a hearing on August 15, 2003, the Court allowed the late filing, but indicated its intention to "consider [the] untimeliness as a factor in its determination of the amount to be allowed."

The fee application, now before the Court, seeks total compensation in the sum of $4,199.73, of which $3,068.50 remains unpaid. Of the sum sought to be allowed, $3,753.50 is the component sought for professional services. Attorney Lafayette claims that he devoted 11.3 hours, at rates ranging from $310 to $320 per hour, and paralegals

14

devoted 2.9 hours at rates ranging from $35 to $65 per hour. An additional sum of $446.23 was sought for reimbursement of expenses. Attorney Lafayette reported payments received in the amount of $685.00

A hearing on the fee application was held on August 27, 2003. There, counsel for the Chapter 13 trustee complained again about the rate charged by Attorney Lafayette ($310-$320 per hour). She also reminded the Court that Attorney Lafayette had not timely complied with this Court's order of March 12, 2003, and specifically noted that, according to Attorney Lafayette's time entries for the relevant period contained in his fee application, he had met twice with the debtor in April of 2003, but no effort was made to amend the plan until after receipt of this Court's show cause order of June 3, 2003. In response, Attorney Lafayette raised his dental and other medical issues and suggested that they caused him to fall behind in his work. Because medical concerns were raised by Attorney Lafayette at the earlier evidentiary hearing conducted on July 22, 2003 in connection with this Court's Case Management Order, more fully described below, the Court inquired as to whether Attorney Lafayette was satisfied to have his testimony there incorporated for these purposes. Attorney Lafayette agreed, and the fee application was taken under advisement to be determined in connection with those cases included in the Case Management Order.

     E.    Peter and Denise Caci

Peter and Denise Caci filed a Chapter 13 case on December 3, 2002 and were represented by Attorney Lafayette. Shortly thereafter, Attorney Lafayette filed a "Disclosure of Attorney Compensation for Debtor" (the "Caci Fee Disclosure"). The Caci

15

Fee Disclosure was similar in form and content to the LaFrance, Oyola, Rolon and Daigneault Fee Disclosures, containing the same infirmities and the same hourly rate. The retainer was here represented to be $500, against a fee of $3,000 with the same conditions set forth in the LaFrance, Oyola, Rolon and Daigneault Fee Disclosures.

On January 15, 2003, the Chapter 13 trustee conducted the section 341 meeting of creditors. She reportedly expressed concern with respect to the value of the debtors' residence, and asked them to produce a broker's price opinion in order to verify its value. When nothing had been forwarded within a month thereafter, the Chapter 13 trustee filed a motion to dismiss the case. Attorney Lafayette then filed an opposition to which was attached an alleged home inspection report prepared by a John Dangutis.

Dangutis had been retained by the debtors prepetition in order to complete a home inspection report. The report was prepared for potential litigation against another home inspector who (the debtors said) had negligently completed another home inspection report for them in conjunction with their purchase of the property. The upshot of Dangutis's report was that the property required substantial repairs which should have been discovered by the first inspector. The Dangutis report was offered to the Chapter 13 trustee and the Court to support the valuation of the property proffered by the debtors. The report was signed by Dangutis as "inspector" with a license number of "115425."

The problem was that Dangutis was not a licensed inspector. Nor did he enjoy the referenced license number, which turned out to be that of some other form of licensure. Attorney Lafayette did not disclose the foregoing to the debtors, although he knew these facts full well. Indeed, Dangutis was another of Attorney Lafayette's Chapter 13 debtor clients, Dangutis and/or his spouse having been debtors in this Court on five (5) occasions

16

since 1995, each time represented by Attorney Lafayette. In Dangutis's then current filing, in which again Attorney Lafayette served as debtor's counsel, Dangutis represented his income as derived solely from social security, veteran's disability, and contributions from his daughter. Dangutis was not in the business of doing home inspections.

On June 12, 2003, the Chapter 13 trustee filed a "Motion . . . for Order Requiring Counsel to the Debtor to Disgorge Fees and to File a Fee Application." That motion recited the foregoing events. No opposition was filed, but the Court nonetheless set the motion for hearing on July 11, 2003. The motion was thereafter continued to September 12, 2003 for an evidentiary hearing, and Attorney Lafayette was ordered to file a fee application on or before August 8, 2003. On August 11, 2003, Attorney Lafayette filed a motion to continue the evidentiary hearing on the grounds that he had pending matters scheduled before another bankruptcy judge on August 12, 2003. But the evidentiary hearing was not scheduled for *August* 12, 2003; it was scheduled for *September* 12, 2003. The motion to continue was accordingly denied. And, not unexpectedly, the fee application, due on August 8, 2003, was filed on August 15, 2003, seven (7) days late.

In the meantime, the debtors had made an important decision. They decided to sell their home and move to Florida. And it was important that they complete the process by early August of 2003, so that they could arrange for critical special needs services for their child in time for the upcoming school year. Both Attorney Lafayette and his paralegal told Peter Caci that the debtors should find a broker, get a purchaser and then contact Attorney Lafayette's office. Attorney Lafayette never told the debtors, however, that the retention of such a broker required advance court approval. On May 3, 2003, the debtors executed an "Exclusive Right to Sell Listing Agreement" with Gravel Real Estate ("Gravel"). By early

17

June, Gravel had been successful in locating a prospective buyer. On June 8, 2003, the debtors accepted a written "Offer to Purchase Real Estate" (the "Purchase Offer"); and on June 18, 2003, executed a purchase and sale agreement with a closing date of July 31, 2003. Gravel and the debtors tried for an extended period of time to get Attorney Lafayette to seek court approval, and finally extracted a promise from the aforesaid paralegal to get Attorney Lafayette to execute the necessary request.[13]

On June 18, 2003, Attorney Lafayette for the first time filed an application to employ Gravel in order to "marketing(sic) and procure buyers." But it was too late. The Purchase Offer, attached to the motion, showed that the buyer had already been procured and failed to set forth any reason for the failure to seek earlier approval of the broker. Accordingly, employment of the broker now satisfied no standard permitted under In re Jarvis, 53 F.3d 415 (1st Cir. 1995), and the Court denied the request.

On June 30, 2003, Attorney Lafayette finally filed a motion seeking to sell the property, requesting expedited determination. But the motion failed to comply with MLRB 2002-5(A) (Contents of Notices of Sale) and Official Local Form 2(A)(Notice of Intended Private Sale of Estate Property). Accordingly, the motion to sell was denied without prejudice.

Not for two weeks did Attorney Lafayette respond, despite being told that the debtors were desperate to move to Florida prior to August 10, 2003 in order to arrange the special needs services for their child. On July 14, 2004, after telling Peter Caci that the

---

[13]According to the debtors, the agreement "sat on [the paralegal's] desk" for an extended period of time without action, while the debtors called repeatedly asking that Attorney Lafayette obtain the requisite approval. The paralegal told Mr. Caci that she had been unable to get Mr. Attorney Lafayette to file it. (Evidentiary hearing, June 28, 2004; testimony of Peter Caci).

18

errors incident to the failed motion to sell were the result of the "personal problems of his paralegal," Attorney Lafayette filed renewed motions to sell the property, for shortened notice, and for the retention of Gravel as broker. These motions were deficient for a myriad of reasons, among them that the employment motion (really one of reconsideration) was filed late, one of the attached documents appeared to be altered without notice to the court, notice to creditors was insufficient, and a recently extended closing date was not disclosed. Still, the motions were set for emergency hearing on July 28, 2003 at which the Court took evidence from a representative from Gravel and from Mr. Caci. Based on that evidence presented, the Court relieved Attorney Lafayette of his responsibilities as counsel for the debtors. That role was thereafter ably filled by attorney Joseph Collins as an accommodation to the debtors and as a courtesy to the Court. The following day, the Court allowed both the motion to sell and the motion to employ Gravel, notwithstanding their deficiencies, having specifically found that the <u>Jarvis</u> standard of "extraordinary circumstances" was met by the "profound incompetence" of the debtors' previous counsel.

Attorney Lafayette filed a fee application, now before the Court, on August 15, 2003. It seeks total compensation in the sum of $5,320.61 (as of August 15, 2003), of which $4,600.61 remains unpaid. Of the sum sought to be allowed, $4,755.00 is the component sought for professional services. Attorney Lafayette claims he devoted 13.5 hours, at the rate of $320 per hour, and paralegals devoted 7.2 hours at rates ranging from $35 to $65 per hour. An additional sum of $565.61 was sought for reimbursement of expenses. Attorney Lafayette reported payments received in the amount of $711.00.

On August 29, 2004, the Chapter 13 trustee and the United States trustee filed their objections to the fee application. The Chapter 13 trustee complained with respect to

19

Attorney Lafayette's role in connection with the Dangutis employment and the fiasco relating to the sale of the property, as well as the requested hourly rate of $320 per hour.[14] The United States trustee concurred with the Chapter 13 trustee's complaints.

An evidentiary hearing was held on the fee application on September 12, 2003. The Chapter 13 trustee and the United States trustee renewed their previously filed complaints with respect to the services rendered by Attorney Lafayette. They also reminded the Court that: (1) after a hearing in the Dangutis bankruptcy case, it had authorized the Chapter 13 trustee to disburse to Mr. and Ms. Caci the sum of $200, representing the fee Dangutis had improperly charged to the debtors for the home inspection; and (2) Attorney Lafayette had not only opposed that order before the court, but had filed an appeal of the order while still representing the Mr. and Ms. Caci. With respect to his services in the Caci case, Attorney Lafayette blamed problems in the case on a non-material error in a position taken by the Chapter 13 trustee early in the case. The fee application was thereafter taken under advisement.

### F.    Mark and Angela Bennett

Mark and Angela Bennett filed a Chapter 13 case on January 6, 2003 and were represented by Attorney Lafayette. Simultaneously, Attorney Lafayette filed a "Disclosure of Attorney Compensation for Debtor" (the "Bennett Fee Disclosure"). The Bennett Fee Disclosure was similar in form and content to the LaFrance, Oyola, Rolon, Daigneault and

---

[14]The Court chooses not to go into other objections by the Chapter 13 trustee with respect to specific time entries in light of the ultimate disallowance of all compensation on other grounds.

20

Caci Fee Disclosures, containing the same infirmities and the same hourly rate. The retainer was here represented to be $500, against a fee of $3,000 with the same conditions set forth in the LaFrance, Oyola, Rolon, Daigneault and Caci Fee Disclosures.

On March 14, 2003, the Chapter 13 trustee filed an objection to the debtors' exemptions, as well as a motion seeking that Attorney Lafayette be ordered to disgorge fees. Both filings cited numerous errors in the Schedules and Chapter 13 plan. Most egregiously, Attorney Lafayette, an experienced practitioner, had combined federal and state exemptions in the debtors' Schedule C in violation of § 522(b) of the Bankruptcy Code and settled law. Further, the debtors' Schedule J included a monthly expense of $276 for the cost of monthly money orders for the plan payments. These issues were raised by the Chapter 13 trustee at the section 341 meeting on February 12, 2003, and Attorney Lafayette was requested to amend the affected Schedules. Over 30 days later, Attorney Lafayette had taken no action to remedy the issues.

On March 18, 2003, in response to the motion seeking disgorgement of his compensation, Attorney Lafayette filed a motion seeking an extension within which to respond to the Chapter 13 trustee's motion. He said he was out of Massachusetts at a continuing legal education conference with the Massachusetts Academy of Trial Attorneys and would remain there until March 24, 2003. Thereafter, he was scheduled for dental surgery for which there would be an approximately seven day recuperation. He requested that the response deadline be extended to April 11, 2003. Attorney Lafayette's request for extension was allowed. But Attorney Lafayette did not meet the extended deadline. On April 16, 2003, Attorney Lafayette filed a motion asking the Court to allow his response to be filed late. He informed the Court therein that he had been ill on account of a tooth

21

abscess and was scheduled to have dental surgery on April 25, 2003. That motion was allowed on April 18, 2003 and the underlying motion to disgorge was set for hearing on May 14, 2003.

In the meantime, the Chapter 13 trustee's objection to the debtor's exemptions came on for hearing on April 16, 2003. It now being more than 60 days from the initial request of the Chapter 13 trustee that Attorney Lafayette cure the obvious infirmities in Schedule C, the Court sustained the Chapter 13 trustee's objection and ordered the debtors to file an amended Schedule C within seven days. The Court also ordered Attorney Lafayette to file a fee application with 14 days, the Court's intention being to have that fee application available for examination at the hearing on the Chapter 13 trustee's motion to disgorge Attorney Lafayette's compensation on May 14, 2003. Finally, the Court issued an order to show cause why the case should not be dismissed or sanctions imposed on account of the debtors' failure to file an amended plan (on account of an unrelated problem) as required by the court's order of March 10, 2003.

The debtors' amended Schedule C was timely filed, as was Attorney Lafayette's fee application. Both the Chapter 13 trustee and the United States trustee filed objections. The Court then set a hearing on the fee application to be heard together with the Chapter 13 trustee's motion seeking disgorgement and the show cause order on May 14, 2003. Those hearings could not go forward as scheduled, however, because Attorney Lafayette had failed to give proper notice of the hearing on his fee application. Accordingly, the

22

Court continued all matters to June 11, 2003 and ordered Attorney Lafayette to notice creditors forthwith.[15]

On June 11, 2003, in response to the Court's April 16 order to show cause, Attorney Lafayette reported that the delay in filing an amended plan related to unliquidated priority claims filed by taxing authorities, including the City of Springfield. While this was not a legitimate excuse for failing to timely seek an extension of the deadline for filing an amended plan, the Court ordered the debtors to file certain tax returns (by August 1, 2003) and any pleadings designed to liquidate the City of Springfield claim (by June 30, 2003). Attorney Lafayette failed to file the latter by the deadline. On July 2, 2003, Attorney Lafayette filed a motion to enlarge time to file pleadings relative to the City of Springfield claim and a motion to compel the City of Springfield to file a proof of claim. He claimed that the documents had been timely prepared but inadvertently left behind in the office when unrelated documents were filed on June 30, 2003. That request for leave to file those documents late was set for hearing on July 30, 2003. Also set for hearing that day was a request for reconsideration of an order of the court, dated June 18, 2003, granting relief from the automatic stay to Deutsche Bank National Trust Company (the "Bank") in order to conduct a foreclosure on certain property of the debtor. The bank's motion seeking that relief had gone unanswered.

On July 30, 2003, Attorney Lafayette withdrew his motion relative to the City of Springfield claim and the Court allowed the motion for reconsideration of its order granting

---

[15]The fee application and the Chapter 13 trustee's motion to disgorge were originally included in the Case Management Order, described below, but were subsequently mooted by the denial of all compensation, ordered on September 24, 2003, as further described herein.

23