Case No. 3: 04-cv-30155-MAP

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

HECTOR L. ROLON

Appellant

v.

PHOEBE MORSE,
UNITED STATES TRUSTEE

Appellee

ON APPEAL FROM A JUDGMENT OF THE UNITED STATES
BANKRUPTCY COURT FOR THE DISTRICT OF MASSACHUSETTS

In re Hector L. Rolon, 02-45994-HJB

BRIEF OF
PHOEBE MORSE,
UNITED STATES TRUSTEE

Eric K. Bradford, Esq.
Office of the United States Trustee
Thomas P. O'Neill, Jr. Federal Building
10 Causeway Street, Room 1184
Boston, Massachusetts 02222
Tel. (617) 788-0415
Email: Eric.K.Bradford@USDOJ.gov

## TABLE OF CONTENTS

**STATEMENT OF JURISDICTION** ................................................................................ 1

**STATEMENT OF ISSUE PRESENTED** ..................................................................... 1

**STANDARD OF APPELLATE REVIEW** ................................................................... 1

**STATEMENT OF THE CASE AND FACTS** ............................................................. 2

    A.    The Case Management Order ............................................................................ 2

    B.    The June 10, 2004 Order. ................................................................................. 3

    C.    Attorney Lafayette Failed To Perfect An Appeal Or To Toll The Appeal Period. ............................................................................................................... 4

    D.    Motion To Authorize Late Appeal. .................................................................. 4

**SUMMARY OF ARGUMENTS** ................................................................................... 5

    I.    THE BANKRUPTCY COURT DID NOT ABUSE ITS DISCRETION IN DENYING THE MOTION ............................................................................... 5

        A.    Perfecting A Bankruptcy Appeal. .............................................................. 5

        B.    Extending The Time To Appeal After Expiration Of The Ten Day Period – Rule 8002(c) And Excusable Neglect. ............................................ 6

        C.    Attorney Lafayette Failed To Demonstrate Excusable Neglect Below. ..... 8

**CONCLUSION** .............................................................................................................. 11

**PRAYER** ........................................................................................................................ 11

**CERTIFICATE OF SERVICE** .................................................................................... 12

# TABLE OF AUTHORITIES

## Cases

In re Winthrop Old Farm Nurseries, Inc., 50 F.3d 72, 73 (1st Cir. 1995)......... ......1

United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed 756, 766 (1948).................................................................................................. 1

Wilson v. Hufman (In re Missionary Baptist Foundation of America, Inc. 712 F.2d 206, 209 (5th Cir. 1983) ........................................................................................ 1

Brown v. Peruner (In re Brown), 313 B.R. 693, 696 - 697 W.D. Mich. 2004) ............. 2

Graphic Communications Int. Union, Local 12 - N v. Quebecor Printing Providence, Inc., 270 F. 3d 1, 3 - 4 (1st Circ. 2001).................................................................. 2, 7, 10

In re LaFrance, et al., 311 B.R. 1 (Bankr. D. Mass. 2004) ......................................... 2, 9

Neal Mitchell Assoc. v. Braunstein (In re Lambeth Corp.), 277 B.R. 1, 7 (B.A.P. 1st Cir. 1998) ..................................................................................................................... 2

Independent Oil & Chem Workers of Quincy, Inc. v. Procter & Gamble Mfg. Co., 864 F.2d 927, 929 (1st Cir. 1988) ............................................................................. 2

Bradshaw v. IRS (In re Bradshaw), 283 B.R. 814, 817 (B.A.P. 1st Cir. 2002) ............. 5

In re Perry Hollow Management Co., Inc., 297 F.3d 34, 38 (1st Cir.2002) .................. 5

Dial Nat. Bank v. Van Houweling (In re Van Houweling), 258 B.R. 173, 176 – 177 (B.A.P. 8th Cir. 2001) ............................................................................................... 6

Shareholders v. Sound Radio, Inc. (In re Sheridan Broadcasting Corp.), 109 F.3d 873, 879 (3rd Cir. 1997)............................................................................................ 6

Yarinsky v Saratoga Springs Plastic Surgery (In re Saratoga Springs Plastic Surgery), 310 B.R. 493, 498 (N.D.N.Y. 2004) ................................................................ 6

Pioneer Investment Servs. Co. v. Brunswick Assocs., 507 U.S. 380, 390 - 392, ....... 6, 7

Williams v. EMC Mortgage Corp. (In re Williams), 216 F.3d 1295, (11th Cir. 2000)  7

In re Taylor, 217 B.R. 465, 467 (Bankr. E.D. Pa.1998)................................................ 7

Active Glass Corp. v. Architectural and Ornamental Iron Workers Local Union 580, 899 F. Supp. 1228 (S.D.N.Y. 1995) ................................................................. 9

**Islamic Republic of Iran v. Boeing Co., 739 F.2d 464, 465 (9th Cir. 1984) cert. denied, 470 U.S. 1053 (1985)** ........................................................................... 9

**J.P. Fyfe, Inc. v. Bradco Supply Corp., 96 B.R. 479, 483-484 (D.N.J.1989)** ................ 9

**Furtado v. Bishop, 604 F.2d 80 (1st Cir. 1979), cert. denied 444 U.S. 1035 (1980)** ... 10

**Wechsler v. Equitable Life Ass. Soc. (In re Wechsler), 246 B.R. 490, 495 (S.D.N.Y. 2000)** ............................................................................................................... 10

## Treatises

10 Lawrence P. King, Collier on Bankruptcy § 8002.10 [2] (15th Ed. 2004) ............ 2, 7

## Statutes

28 U.S.C. § 158(a) ........................................................................................... 1, 5

11 U.S.C. § 330(a) ........................................................................................... 2, 3

## Rules

**Fed R. Bankr. P. 8013** ........................................................................................ 1

**Fed. R. Bankr. P. 8002(c)(2)** ........................................................ 1, 2, 4, 5, 6, 7, 8, 10

**Fed. R. App. P. 4(a)(1)(A))** .............................................................................. 2

**Fed. R. Bankr. P. 8002(a)** ............................................................................... 4, 5

**Fed. R. Bankr. P. 8002(b)** ............................................................................... 4, 5

**Fed. R. Bankr. P. 8002(c)** ................................................................................ 6

**Fed. R. Bankr. P. 9006(b)(1)** ........................................................................... 6

**Fed. R. App. P. 4(a)** ........................................................................................ 7

## STATEMENT OF JURISDICTION

This appeal arises from a final order entered by the United States Bankruptcy Court for the District of Massachusetts (Henry J. Boroff, J.) dated July 8, 2004, denying Attorney Francis Lafayette's "motion for reconsideration and to allow late filing of appeal on grounds of excusable neglect" ("Motion"). This Court has jurisdiction over this appeal under 28 U.S.C. § 158(a).

## STATEMENT OF ISSUE PRESENTED

Did the bankruptcy court abuse its discretion in denying Attorney Lafayette's Motion?

## STANDARD OF APPELLATE REVIEW

In general, appellate courts "'independently review the bankruptcy court's decision, applying the 'clearly erroneous' standard to findings of fact and *de novo* review to conclusions of law' . . . [Where the issue] poses a mixed question of law and fact, [the court applies] the clearly erroneous standard, unless the bankruptcy court's analysis was 'infected by legal error . . . .'" *In re Winthrop Old Farm Nurseries, Inc.*, 50 F.3d 72, 73 (1st Cir. 1995) (citations omitted). *See* Fed. R. Bankr. P. 8013.[1] An appellate court may reverse a bankruptcy court order denying a motion to extend time for filing a notice of appeal under Fed. R. Bankr. P. 8002(c)(2) only if the appellant demonstrates that the

---

[1] A finding of fact is clearly erroneous "when although there is evidence to support it, the reviewing court on the evidence is left with the definite and firm conviction that a mistake has been committed . . . ." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed 756, 766 (1948). "When the finding of fact is premised on an improper legal standard, or a proper one is improperly applied, that finding loses the insulation of the clearly erroneous rule . . . ." *Wilson v. Huffman (In re Missionary Baptist Foundation of America, Inc.*, 712 F.2d 206, 209 (5th Cir. 1983).

lower court abused its discretion.² *Brown v. Peurner (In re Brown)*, 313 B.R. 693, 696 – 697 W.D. Mich. 2004). *See Graphic Communications Int. Union, Local 12 – N v. Quebecor Printing Providence, Inc.*, 270 F. 3d 1, 3 – 4 (1st Cir. 2001) (interpreting Fed. R. App. P. 4(a)(1)(A)).³

### STATEMENT OF THE CASE AND FACTS

This case arises from a year long effort by Judge Boroff, the United States Trustee and the standing chapter 13 trustee to determine whether Attorney Lafayette had overcharged seven of his consumer bankruptcy clients for his work. *In re LaFrance, et al.*, 311 B.R. 1 (Bankr. D. Mass. 2004); 11 U.S.C. § 330(a).

A.   **The Case Management Order.**

On June 24, 2003, the bankruptcy court issued a "case management order" that, among other things, set evidentiary hearings on fee applications that Attorney Lafayette had filed in five chapter 13 cases, required him to show cause why he should not have to file fee applications in all of his chapter 7 and 13 cases and ordered him to deposit all fees in his client trust account and not to apply them to current bills, pending further court order. *Id.* at 17 – 18.

---

² "'The cask which encases a judge's discretion, though commodious, can be shattered when a reviewing tribunal is persuaded that the trial court misconceived or misapplied the law, or misconstrued its own rules.')". It abused its discretion if it ignored 'a material factor deserving significant weight,' relied upon 'an improper factor,' or made 'a serious mistake in weighing' proper factors . . . ." *Neal Mitchell Assoc. v. Braunstein (In re Lambeth Corp.)*, 277 B.R. 1, 7 (B.A.P. 1st Cir. 1998), citing *Independent Oil & Chem Workers of Quincy, Inc. v. Procter & Gamble Mfg. Co.*, 864 F.2d 927, 929 (1st Cir. 1988).

³ Inasmuch as Fed. R. Bankr. P. 8002(c)(2) was derived from Fed. R. App. P. 4(a)(1)(A), cases interpreting the latter provide appellate courts guidance in evaluating "excusable neglect" under Bankruptcy Rule 8002(c)(2). 10 Lawrence P. King, *Collier on Bankruptcy* § 8002.10 [2] (15th Ed. 2004).

Throughout the year that it took for the court to evaluate Attorney Lafayette's services under section 330(a), Attorney Lafayette did not dispute the material facts – *viz.*, that his fee application in one case contained duplicate time entries for himself and his paralegal (*Id.* at 6), that he had claimed an improper exemption for one client (*Id.* at 7 – 8), that he had failed to object to motions to dismiss filed by the chapter 13 trustee (*Id.* at 9), that he had failed to file an amended chapter 13 plan, as ordered by the court (*Id.* at 10), that he had failed in a case to seek court authorization before selling estate property (*Id.* at 11 – 13), that he had failed to correct obvious errors in his clients' schedules and statement of financial affairs (*Id.* at 13 – 15) and that he had failed to correct conceded errors by filing an amended chapter 13 plan (*Id.* at 16 – 17). Rather than accept responsibility for his failure to serve his clients or to appear for scheduled hearings, he advanced a series of excuses - computer software glitches, conflicting court dates, missing or ill support staff, out of town seminars and acute or chronic health problems of his own (bad teeth, bad back and adverse reactions to prescribed medication). *Id.*

**B.     The June 10, 2004 Order.**

Based upon the undisputed facts, Judge Boroff entered an order dated June 10, 2004, finding that Attorney Lafayette's services were deficient and requiring him, among other things, to disgorge fees and to refrain from accepting payments from clients without prior court authorization. *Id.* at 26; 11 U.S.C. § 330(a). The court stated:

> This Court finds it hard to believe, and does not believe, that most (if any) of the various errors described in each of the above referenced cases are the result of the various excuses proffered by Attorney Lafayette. But even if the excuses are true, they are not sufficient to overlook the sloppy, careless and unprofessional actions taken by Attorney Lafayette in each of the referenced cases. Clients come to attorneys for a service. Where the service is not provided, or provided poorly, they should not be required to pay for the service, regardless of the validity of the excuse offered.

3

*Id.* at 24 - 25.

### C. Attorney Lafayette Failed To Perfect An Appeal Or To Toll The Appeal Period.

Attorney Lafayette did not file a notice of appeal by June 21, 2004, within the ten day period prescribed by Fed. R. Bankr. P. 8002(a). Chapter 13 Trustee's Appeal Appendix ("*App.*") at 1, page 11. He also omitted to toll the appeal period by filing a post-trial motion within the ten day period prescribed by Fed. R. Bankr. P. 8002(b). *Id.* Instead, he waited until June 24, 2004 to file his notice of appeal. *Id.* The bankruptcy court entered an order dated June 29, 2004 dismissing the appeal, because it was untimely. *Id.* at 12; Fed. R. Bankr. P. 8002(a).

### D. Motion To Authorize Late Appeal.

Attorney Lafayette filed the Motion on June 30, 2004, urging the court to authorize a late appeal under Fed. R. Bankr. P. 8002(c)(2) due to excusable neglect. *See* addendum ("*Add.*") at 1. Consistent with his pattern of deflecting personal responsibility for his professional lapses, he argued that excusable neglect arose from health problems. He attached a written follow up from his attending physician. *Id.* at 4.

The bankruptcy court entered an order dated July 8, 2004 ("Order"), denying the Motion. *App.* at 6. Citing an attached report, the court stated:

> As in the LaFrance decision, this Court finds the existence of the alleged illness insufficient to justify Attorney Lafayette's failure to timely act. It is unlikely that either or any of these alleged conditions interfered in any material way with his ability to file a timely notice of appeal. This Court has checked with the records of the Clerk's Office and is advised that (and takes judicial notice) that during the period of June 10, 2004 to June 21, 2004 in which the filing [of a notice of appeal of the Order] would have been timely, Attorney Lafayette:

    1.    appeared before this Court on June 16, 2004 in five (5) separate hearings; and

    2.    electronically filed eighty three (83) pleadings, five (5) of which were new bankruptcy cases, spread throughout the relevant period . . . .

In light of the foregoing, this Court finds that Attorney Lafayette's failure to timely file his notice of appeal was within his control and resulted from his own inexcusable negligence. The Motion will, accordingly, be denied.

*Id.*

Attorney Lafayette appeals the Order, arguing that the bankruptcy court erred in not finding excusable neglect.

## SUMMARY OF ARGUMENTS

The bankruptcy court did not abuse its discretion in denying the Motion, because Attorney Lafayette failed to demonstrate excusable neglect for purposes of Fed. R. Bankr. P. 8002(c)(2). The Court should affirm the Order.

### I.    THE BANKRUPTCY COURT DID NOT ABUSE ITS DISCRETION IN DENYING THE MOTION

    A.    **Perfecting A Bankruptcy Appeal.**

An appellant must file a written notice of appeal within ten days of the entry of a final bankruptcy court order. 28 U.S.C. § 158(a); Fed. R. Bankr. P. 8002(a). If he does not do so, or if he omits to toll the period by filing a timely post-trial motion, the appeal will fail. *Bradshaw v. IRS (In re Bradshaw)*, 283 B.R. 814, 817 (B.A.P. 1st Cir. 2002), citing *In re Perry Hollow Management Co., Inc.*, 297 F.3d 34, 38 (1st Cir.2002) (holding that "the timely filing of an appeal is 'mandatory and jurisdictional . . . .'"). Fed. R. Bankr. P. 8002(b).

/

5

B.  **Extending The Time To Appeal After Expiration Of The Ten Day Period – Rule 8002(c) And Excusable Neglect.**

Rule 8002(c)[4] authorizes a party to request an extension of time to file a notice of appeal, after the initial ten day period has passed, if he files a written motion within 30 days of the entry of the order and demonstrates that he missed the deadline for "excusable neglect." *Dial Nat. Bank v. Van Houweling (In re Van Houweling)*, 258 B.R. 173, 176 – 177 (B.A.P. 8th Cir. 2001); *Shareholders v. Sound Radio, Inc. (In re Sheridan Broadcasting Corp.)*, 109 F.3d 873, 879 (3rd Cir. 1997). The determination of what constitutes excusable neglect rests within the bankruptcy court's discretion. *Yarinsky v Saratoga Springs Plastic Surgery (In re Saratoga Springs Plastic Surgery)*, 310 B.R. 493, 498 (N.D.N.Y. 2004).

In *Pioneer Investment Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380, 390 – 392, the United States Supreme Court, resolving a split among the circuits, adopted an elastic definition for "excusable neglect," encompassing inadvertence, mistake or carelessness, as well as circumstances beyond a party's control. *In re Sheridan Broadcasting Corp.*, 109 F.3d at 879. Although the case addressed the untimely filing of a proof of claim under Fed. R. Bankr. P. 9006(b)(1), other courts have cited it in analyzing excusable neglect under Fed. R. Bankr. P. 8002(c)(2). *See Dial Nat. Bank*, 258 B.R. at 176 – 177;

---

[4] Rule 8002 (c)(2) provides:

> A request to extend the time for filing a notice of appeal must be made by written motion filed before the time for filing a notice of appeal has expired, except that such a motion filed not later than 20 days after the expiration of the time for filing a notice of appeal may be granted upon a showing of excusable neglect. An extension of time for filing a notice of appeal may not exceed 20 days from the expiration of the time for filing a notice of appeal otherwise prescribed by this rule or 10 days from the date of entry of the order granting the motion, whichever is later.

10 Lawrence P. King, *Collier on Bankruptcy* § 8002.10 [2] (15th Ed. 2004). The Supreme Court identified four factors to be weighed in evaluating a claim of excusable neglect:

> [W]e conclude that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include ... the danger of prejudice to the [non-moving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Pioneer Investment Servs. Co. v. Brunswick Assocs.*, 507 U.S. at 395.

Bankruptcy Rule 8002(c)(2) is derived from Fed. R. App. P. 4(a). 10 Lawrence P. King, *Collier on Bankruptcy* § 8002.10 [2] (15th Ed. 2004); *Williams v. EMC Mortgage Corp. (In re Williams)*, 216 F.3d 1295, 1297 (11th Cir. 2000). The First Circuit Court of Appeals, interpreting "excusable neglect" under Fed. R. App. P. 4(a), has observed that "'[t]he four *Pioneer* factors do not carry equal weight; the excuse given for the late filing must have the greatest import. While prejudice, length of delay, and good faith might have more relevance in a closer case, the reason-for-delay factor will always be critical to the inquiry . . . . This focus comports with the *Pioneer* Court's recognition that 'inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect.'" *Graphic Communications Int. Union, Local 12 – N*, 270 F. 3d at 5 – 6 (citations omitted).[5]

/

---

[5] One court has noted that the need for finality with respect to appeals requires a more stringent application of excusable neglect under Rule 8002(c)(2). *See In re Taylor*, 217 B.R. 465, 467 (Bankr. E.D. Pa.1998).

### C. Attorney Lafayette Failed To Demonstrate Excusable Neglect Below.

Attorney Lafayette's argument is two-fold. First, he says that the bankruptcy court erred in not considering the reason why he sought the extension – his poor health. *Appellant's Brief* at 8 – 9.[6] Second, for the first time, he complains that the court failed to take into account that it took several days for him to receive the Order by mail. *Id.*

Attorney Lafayette is correct in identifying the bankruptcy court's analysis of the third prong of the *Pioneer* test as the key consideration under Fed. R. Bankr. P. 8002(c)(2) and, accordingly, the fulcrum of success or failure in this appeal. *Id.* at 5 – 6. He ignores that this test formed the explicit basis for the court's ruling, however.

In the Order, the bankruptcy court considered Attorney Lafayette's "allegedly poor physical condition and the side effects of medication as cause for his having failed to meet this important deadline [of timely perfecting his appeal] . . . ." *App.* at 7. But given Attorney Lafayette's pattern of blaming professional lapses upon his health, the court expressed skepticism that illness had prevented him from timely perfecting his appeal of the June 10, 2004 order. *Id.* At bottom, Attorney Lafayette had exhausted the excuse, and his failure to file a timely notice of appeal was inexcusable for purposes of Fed. R. Bankr. P. 8002(c)(2).[7]

---

[6] He says that his "preoccupation with his two illnesses was the undisputed cause for his neglect in timely filing the appeal. That neglect was excusable in this case . . . ." *Appellant's Brief* at 9.

[7] In the June 10, 2004 order, the bankruptcy court stated that Attorney Lafayette should not use his illnesses as a perpetual excuse for chronic mistakes, because his doing so placed clients and the administration of justice at risk. The court suggested that, if necessary to accommodate the paramount needs of justice, Attorney Lafayette should consider making alternate arrangements for his practice.

Attorney Lafayette cites several decisions for the proposition that an attorney's illness constitutes excusable neglect under Rule 8002(c)(2). These cases are distinguishable from the undisputed facts here, however, because the evidence demonstrated that each attorney had been incapacitated by his illness. *See Active Glass Corp. v. Architectural and Ornamental Iron Workers Local Union 580*, 899 F. Supp. 1228 (S.D.N.Y. 1995) (finding that an attorney's hospitalization for cancer treatments justified finding of excusable neglect); *Islamic Republic of Iran v. Boeing Co.*, 739 F.2d 464, 465 (9th Cir. 1984) *cert. denied*, 470 U.S. 1053 (1985) (holding that "illness of counsel entrusted with the filing responsibility [for a notice of appeal] may amount to extraordinary circumstances when the illness is so physically and mentally disabling that counsel is unable to file the appeal and is not reasonably capable of communicating to co-counsel his inability to file . . . ."); *J.P. Fyfe, Inc. v. Bradco Supply Corp.*, 96 B.R. 479, 483-484 (D.N.J.1989) (attorney's inability to consult by telephone with members of her

---

> The illness of an attorney presents special concerns, since those services are not easily replaced either on a temporary basis or for an extended period of time. When an attorney has a temporary illness, other attorneys in the case have a duty of courtesy to one another, and the court has a duty to ensure that the illness does not affect the administration of justice. Where time is not of the essence, continuances ought to be granted or other accommodations made. But where illness become (sic) a daily or weekly excuse for repeated errors made over an extended period of time and which threaten to sacrifice a client's economic well-being, courtesy is no longer a factor. An attorney may simply not permit his or her client to suffer legal harm, even where the excuse is the attorney's long term illness. Many attorneys suffer from long-term or chronic illnesses and manage quite well to represent their clients without sacrificing the rights of those clients. An attorney suffering from such an illness must obtain appropriate assistance or supports to avoid reasonable risks of harm to clients, and, failing that, withdraw from ongoing representations and decline to take on new cases.

*In re LaFrance, et al.*, 311 B.R at 24 – 25.

firm due to her having taken medication for a sudden illness, which was "not 'readily foreseeable . . . ,'" was excusable neglect).

By contrast, Attorney Lafayette could not have been incapacitated from June 11, 2004 through June 20, 2004, because, as noted in the Order, he filed 83 pleadings during that period and attended five hearings before the bankruptcy court on July 16, 2004. *App.* at 6. Attorney Lafayette does not allege that he was hospitalized at any time from June 11 – 21, 2004. He states instead that he was hospitalized on May 3, 2003, one year and five weeks before the Court entered the June 10, 2004 order, and that he received medical treatments on June 3, 2004, one week prior to the entry of the order, and June 24, 2004, the date on which he filed his untimely notice of appeal. *Appellant's Brief* at 4 – 5; *Motion (App.)* at 1. Nothing suggests that his illness prevented him from preparing and filing a one page notice of appeal on or before June 21, 2004. In that light, his failure to file a notice of appeal is inexcusable.

Attorney Lafayette raises his argument regarding receipt of the Order for the first time on appeal. In failing to raise it in his Motion, he has waived it here. *Furtado v. Bishop*, 604 F.2d 80 (1st Cir. 1979), *cert. denied* 444 U.S. 1035 (1980).

Regardless, failure to perfect an appeal due to a delay in receiving an order does not constitute excusable neglect under Fed. R. Bankr. P. 8002(c)(2). *See Wechsler v. Equitable Life Ass. Soc. (In re Wechsler)*, 246 B.R. 490, 495 (S.D.N.Y. 2000). In addition, Attorney Lafayette does not dispute that he received the Order within the ten day appeal period. He does not explain why he failed to act.

The bankruptcy court did not abuse its discretion in denying the Motion. The Court should affirm the Order. *Graphic Communications Int. Union, Local 12 – N*, 270 F. 3d at 5 – 6. To the extent that the bankruptcy court erred, its error was harmless.

## CONCLUSION

The Court should affirm the bankruptcy court's order denying the Motion, because, as the record demonstrates, Attorney Lafayette did not establish that his illness constituted excusable neglect, justifying his filing a late notice of appeal.

## PRAYER

WHEREFORE, the United States Trustee prays that the Court affirm the court's decision below.

                PHOEBE MORSE

                United States Trustee

By: /s/ Eric K. Bradford
Eric K. Bradford BBO#560231
United States Department of Justice
Thomas P. O'Neill Jr. Federal Bldg.
10 Causeway Street, Room 1184
Boston, MA 02222
(617) 788-0415

Dated: October 20, 2004.

/

## CERTIFICATE OF SERVICE

  I certify that on October 20, 2004, true and correct copies of the UNITED STATES TRUSTEE'S APPELLEE'S BRIEF were served by United States mail, First Class postage pre-paid, or by email upon the individuals listed below.

              PHOEBE MORSE

              United States Trustee

By:  /s/ Eric K. Bradford
    Eric K. Bradford BBO#560231
    United States Department of Justice
    Thomas P. O'Neill Jr. Federal Bldg.
    10 Causeway Street, Room 1184
    Boston, MA 02222
    (617) 788-0415

Dated: October 20, 2004.

Francis Lafayette
1024 Park Street
P.O. Box 1020
Palmer, MA 01069
(Appellant)

Denise M. Pappalardo, Esq.
Chapter 13 Trustee
P.O. Box 16607
Worcester, MA 01601
(Appellee)